**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-cv-20927-COOKE/GOODMAN**

IDEAL IMAGE DEVELOPMENT
CORPORATION,

     Plaintiff,

v.

IDEALASER HAIR REMOVAL CORP.
d/b/a IDEALASER COSMETIC CENTER,
and ODALYS ALONSO.

     Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS [DE 135]**

Plaintiff Ideal Image Development Corporation ("Plaintiff"), hereby files this memorandum in opposition to Defendants' Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927, and the Court's Inherent Power [DE 135] ("Defendants' Motion").

## INTRODUCTION

Defendants' Motion is procedurally premature and substantively baseless. Defendants' Motion was filed long after Defendants received from the undersigned a Rule 11 letter (which was served well before Defendants prepared and served their own Rule 11 safe harbor letter) requesting that they withdraw their second through seventh affirmative defenses.[1] To date, Plaintiff has withheld filing its own motion because Eleventh Circuit precedent holds that Rule 11 sanctions motions should be determined after claims and defenses are disposed of by a motion to dismiss, motion for summary judgment, or at trial, which is usually at the end of the litigation. *Donaldson v. Clark*, 819 F.2d 1551, 1155 (11th Cir. 1987).

Defendants' Motion -- which would determine the case pretrial, and without the benefit of a trial of contested facts -- is procedurally premature based upon *Donaldson*. Further, Defendants' Motion is substantively meritless. The evidence will establish that Defendants are infringing on Plaintiff's federally registered family of trademarks utilizing "Ideal," in the provision of laser and other skin care treatments in medical spas. Defendants' subsequently created "IdeaLaser" business is indisputably a competitor in the same industry, and Defendants undeniably began use of the name "IdeaLaser" subsequent to Plaintiff's registration and use of some of the trademarks included in Plaintiff's family of marks.

## ARGUMENT

### A.    The Motion for Sanctions Should be Denied Because it was Filed Prematurely[2]

As the Eleventh Circuit has held, "in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation …." *Donaldson*, 819 F.2d at 1555; *Electric Mirror, LLC v. Majestic Mirrors & Frame, LLC*, No. 17-23991, 2018 WL 2290717, at

---

[1] A copy of the Plaintiff's November 26, 2018 Rule 11 Safe Harbor Letter, without exhibits, is attached as Exhibit "A."

[2] Notably, Defendants admit that the undersigned counsel provided Defendants' counsel with the legal authority making clear that a Rule 11 motion for sanctions would be premature if filed before the parties' claims or defenses were resolved. [DE 137, at p. 16].  Defendants disregarded the authority.

*1 (S.D. Fla. Mar. 5, 2018) (same). "The Eleventh Circuit's position is consistent with the Rules Advisory Committee which anticipated that in the case of pleadings, the sanctions issue under Rule 11 normally will be determined at the end of the litigation…." *FCOA, LLC v. Foremost Title & Escrow Servs., LLC*, No. 17-23971, 2018 WL 624497, at *3 (S.D. Fla. Jan. 30, 2018); Wright and Miller, Federal Practice and Procedure: Civil 3d § 1337.1 (2004) (stating that when "the challenged conduct is the institution of the action itself … the question whether there has been a Rule 11 violation generally is not decided until after the litigation is completed, in order to avoid delaying the disposition of the merits of the case").

"The reason Rule 11 sanctions are deferred until the end of a case is to allow the court 'to gain a full sense of the case and to avoid unnecessary delay of disposition of the case on the merits. This is a sensible practice where the thrust of the sanctions motion is that institution of the case itself was improper.'" *TIC Park Centre 9, LLC v. Cabot*, No. 16-24569, 2018 WL 4932249, at *3 (S.D. Fla. Oct. 10, 2018); *Gonzalez v. Winn-Dixie Stores, Inc.*, No. 14-20792 (S.D. Fla May 6, 2014) (finding that Defendants' motion for sanctions was premature). Despite this, Defendants prematurely filed their Motion for Sanctions. Defendants have alleged no reason, nor provided any support, to establish why this Court should deal with their request for sanctions outside the normal course instructed by the Eleventh Circuit. The failure to do so should result in the denial of Defendants' motion, with or without prejudice.

### B.     The Motion Should be Denied as an Improper Attempt to Achieve Resolution on the Merits.

Additionally, Defendants' Motion is an improper attempt to convert a disagreement over the factual allegations and legal arguments in Plaintiff's Complaint into a sanctions dispute. The Motion seeks a disposition on the merits of this case via Rule 11. *FCOA*, 2018 WL 624497, at *2. It is well-established that "a Rule 11 motion is not an avenue to seek judgment on the merits of a case." *Sutakovic v. CG RYC, LLC*, No. 18-20125, 2018 WL 2766206, at *4 (S.D. Fla. June 8, 2018). "Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." *Bigford v. BESM, Inc.*, No. 12-61215, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012); *KB Home v. Smith*, No. 13-2644, 2014 WL 12621583, at *2 (M.D. Fla. May 7, 2014) (denying Rule 11 motion as improper attempt to dispose of case).

Here, the parties have both filed motions for summary judgment. [*See* DE 100 and 102]. Defendants' Motion for Summary Judgment [DE 102] seeks summary judgment solely on Defendants' laches defense.  Defendants had an opportunity to move for summary judgment on Plaintiff's infringement claims (including claims for trademark infringement under the Lanham Act, common law trademark infringement, unfair competition, dilution and violation of FDUTPA), but chose not to do so.[3]

There are mechanisms established by the federal rules to dispose of cases on the merits, and a Rule 11 motion is not one of them. The Court should not utilize Defendants' Motion as a potentially dispositive motion, and instead should dispose of this case through the avenues established in the Federal Rules of Civil Procedure. *See Doe* v. *Roe,* No. 17-23333, 2019 WL 1316041, at *2 (S.D. Fla. Mar. 12, 2019) (denying motion for sanction without prejudice to be refiled upon conclusion of lawsuit, in part, because "Defendants' arguments are more properly presented in a motion for summary judgment or other dispositive motion."); *Electric Mirror*, 2018 WL 2290717, at *2 ("Defendant would be well served to wait for a favorable ruling on a future motion for summary judgment based on undisputed material facts or success at trial. If it prevails on either, it may renew the Rule 11 Motion.").

## C.    Defendants' Motion is Substantively Meritless & Factually Inaccurate

Defendants' Motion seeks sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and the Court's inherent powers. As more fully described below, Rule 11 permits sanctions where a pleading is "objectively frivolous," and 28 U.S.C. § 1927 provides for the possibility of sanctions where an attorney, in bad faith, knowingly or recklessly pursues a frivolous claim and, in doing so, unreasonably and vexatiously multiplies the legal proceedings. And, a court has the inherent power to award sanctions where an attorney "knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." None of those circumstances exist here. To the contrary, at trial, Plaintiff should prevail on all of its claims which are strongly supported by the facts and the law. Likewise, Defendants have failed to

---

[3] If Plaintiff's claims were truly as frivolous as Defendants contend, it stands to reason that Defendants would have moved for summary judgment on the claims.  Defendants' failure in this regard speaks volumes about the merits of Defendants' present Motion.  *See, e.g.*, *Johnson v. Fla.*, 348 F.3d 1334, 1341 (8th Cir. 2003) (affirming denial of motion filed by prevailing defendant in civil rights action seeking attorneys' fees, arguing the claim was frivolous, and pointing out that, in denying the motion for attorney's fees, the district court commented on the fact that the defendant "did not even move for summary judgment").

demonstrate any bad faith conduct by Plaintiff and its counsel.

Additionally, this Court should view with skepticism the spurious allegations made in the Motion for Sanctions, as the arguments made are generally either belied by the facts, or in making the allegation, Defendants stretch the truth.  For example, Defendants claim that they filed a motion to extend the discovery deadline as a result of "Plaintiff's evasive discovery responses" and state that "[o]n November 20, 2018 the Court granted Defendants' [motion to extend the discovery deadline] *because the threat of real prejudice to Defendants defense of the case had been established* . . ." [DE 135, at p. 5, ¶ 21 (emphasis added) (citing DE 65, Paperless Order Granting in Part Defendants' Motion for Extension of the Deadline for Fact Discovery)]. In making this claim, Defendants suggest to this Court that Judge Cooke granted Defendants' motion "because" Defendants "established" "real prejudice."  Judge Cooke's paperless order, which was entered before Plaintiff filed a response to Defendants' motion, however, does not come remotely close to stating that Defendants' motion was being granted because Defendants established prejudice. [DE 65].  In fact, Judge Cooke's order does not provide *any* reason for the granting of Defendants' motion. [*Id*.]. Therefore, Defendants' representations regarding the content of Judge Cooke's order are simply false. Moreover, as explained in more detail below, Defendants' request for additional time to take discovery stemmed from their own delay in setting depositions and subsequent refusal to work through various issues related to those depositions. Defendants' Motion for Sanctions is riddled with these types of misrepresentations and embellishments.

### D.      The Facts Supporting Plaintiff's Claims

Plaintiff Ideal Image operates approximately 130 medical spas in the United States and Canada, and provides a wide range of cosmetic services, including laser hair removal, body shaping, skin rejuvenation and injectable treatments. [DE 101-1 at ¶¶ 3 and 5]. These medical spas operate under the well-known IDEAL IMAGE family of trademarks (the "Ideal Family of Marks"), which have been used or acquired through assignment, and are protected as federally registered trademarks. Plaintiff's use or registration of the variety of trademarks associated with its business began as early as 2004. [*Id*. at ¶¶ 6-7]. Included among the Ideal Family of Marks are the following: IDEAL IMAGE, IDEAL SKIN, IDEAL LIPS, IDEAL BIKINI, IDEAL CLUB, IDEAL FACIAL REJUVENATION, IDEAL PROTECTION and IDEAL LASER.

In order to identify the source, origin, and sponsorship of Plaintiff's services, Plaintiff

has, over the course of nearly two decades, spent tens of millions of dollars advertising throughout the United States, becoming the nationwide leader in providing cosmetic treatment services, including laser hair removal. [*Id.* at ¶¶ 7-8].

After Plaintiff had already invested a large amount of time and money building the Ideal Family of Marks, Defendants began their operation of a Doral-based medical spa under the name "IdeaLaser" (the "Infringing Mark") in 2009.  Defendants opened their business more than five years after Plaintiff's first use of the original "Ideal Image" trademark and years after Plaintiff began using or registered other "Ideal" formative trademarks. Defendants have used the "IdeaLaser" name in providing the same types of services provided by Plaintiff, including, but not limited to, laser hair removal, tattoo removal and Botox® treatments. [Ex. B, Idealaser I Dep., at p. 170:2-25].

As a result of Defendants' conduct, there is a clear likelihood of customer confusion between Plaintiff's Ideal Family of Marks and Defendants' Infringing Mark based on: (1) the strength of Plaintiff's Ideal Family of Marks; (2) the similarity between Plaintiff's Ideal Family of Marks and Defendants' Infringing Mark; (3) the similarity between the products and services offered by Plaintiff and Defendants; (4) the similarity of advertising methods used by Plaintiff and Defendants; (5) Defendants' intent on using marks that are similar to Plaintiff's Ideal Family of Marks; and (6) the likelihood of consumer confusion (to which Defendants admit) and the existence of actual confusion (to which Defendants also admit).

There can be no doubt that upon seeing Defendants' use of the mark "IdeaLaser," consumers will be deceived into concluding that the products and services offered by Defendants are supplied by Plaintiff or endorsed by Plaintiff.  Indeed, there have already been documented instances of consumer confusion. [DE 108-2, at pp. 36:23-38:3; DE 108-4, at pp. 152:16-154:7]. These impressions are calculated to, have had, and will continue to have, a material influence on consumers' decisions in choosing to patronize Defendants' establishment, all of which has and will cause damage to Plaintiff.

E.      **Plaintiff Will Prevail on its Claims**

The notion that Plaintiff's claims are "objectively frivolous" or in "bad faith" is preposterous. Ideal Image has brought this action to protect its Ideal Family of Marks. The registration of a trademark on the principal register of the USPTO is *prima facie* evidence of validity and establishes a presumption that the mark is protectable or distinct. 15 U.S.C. §

1057(b); *see also Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n. 3 (11th Cir. 2007); *AR2, LLC v. Rudnick*, No. 14–80809–CIV, 2014 WL 3887907, at *4 (S.D. Fla. Aug. 7, 2014) ("Registration of a trademark establishes a rebuttable presumption that it is distinctive). Moreover, after five years of continuous use, the owner of a registered trademark may file an affidavit and have the mark declared "incontestable." *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1208 (11th Cir. 1999). Incontestability is "conclusive evidence of the registrants' right to use the trademark, subject to certain enumerated defenses" including fraud and abandonment. *Id*. Ideal Image has used some of the marks included in its Family of Marks for more than 5 years and filed the requisite declaration of use, making the trademarks incontestable.[4] In short, Ideal Image's trademark rights are strong, valid and enforceable, and render Defendants' claim of frivolousness without merit.

The entire focus of Defendants' argument is the registration date of the particular trademark "Ideal Laser," and its contention that Plaintiff has never used that particular trademark in commerce. Defendants' argument ignores that Ideal Image has registered and used a family of trademarks using the "IDEAL" prefix in an identical business, and that some of these marks were created and used prior to Defendants' infringing use of the "IdeaLaser" name. There is no requirement that Plaintiff must initially use the particular "Ideal Laser" trademark as a precondition to enforcement of its rights here. Indeed, as alleged in Plaintiff's Complaint [DE 1, at ¶¶ 14-15], Defendants' use of "IdeaLaser" infringes on Plaintiff's <u>family</u> of trademarks. As explained by McCarthy on Trademarks and Unfair Competition:

> A trademark owner may use a plurality of marks with a common prefix, suffix or syllable. It has the opportunity to establish that it has a "family" of marks, all of which have a common "surname." It relies on this to argue that Defendants' mark, which incorporates the "family surname," is confusingly similar to the total "family group."

4 McCarthy on Trademarks and Unfair Competition § 23:61 (5th Ed.).

The seminal case regarding the protections afforded to a family of marks is *J & J Snack*

---

[4] For example, Plaintiff's "Ideal Image," "Ideal Office," and "Ideal Financing" trademarks have become incontestable.  [*See* Composite Exhibit C]. The Court may take judicial notice of these documents from the USPTO's website. *See Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017).

*Foods Corp. v. McDonald's Corp.*, 932 F. 2d 1460 (Fed. Cir. 1991). In that case, McDonald's successfully barred a snack food company's registration of trademarks for McPRETZEL and McDUGAL McPRETZEL under the family of marks doctrine, despite the fact that McDonald's had never *registered or used* either of the names. The Court held:

> A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristics of the family, with the trademark owner.

*Id.* at 1462.

The decision lists examples of families of marks in particular businesses. For example, AMF has established a family of marks for "fish" in connection of the names for sailboats. Likewise, Motorola had an established a family of marks associated with the term "Golden" by use of marks under the names GOLDEN VOICE, GOLDEN BEAM and GOLDEN VIEW. *Id.* at 1462-63. The Court allowed McDonald's to block J & J Snack's registration of the MCPRETZEL and MCDUGAL names, despite that McDonald's had never used the names. *Id.* at 1462.

Here, Plaintiff has spent tens of millions building its Ideal Family of Marks.  Defendants chose a name that would lead, and has led, consumers to confuse Defendants with Plaintiff. Moreover, the parties' markets are the same, their services are the same, and their target customers are the same.   Additionally, here, Defendants **admit** that there is likelihood of confusion and that there has already been **actual** confusion. [Ex. B, Idealaser I Dep., at p. 20:8-12; DE 108-2, at pp. 36:23-38:3; DE 108-4, at pp. 152:16-154:7].   As such, not only are Plaintiff's claims not frivolous, Plaintiff is very likely to prevail at trial after it presents all of its evidence.

### F.       Defendants' Legal Authority Does Not Warrant Judgment in its Favor, Let Alone Sanctions

Defendants cite *Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018 (11th Cir. 1990) to support the allegation that Plaintiff's claims are frivolous.  Importantly, *Tally-Ho* did not involve a motion for sanctions, but instead was an appeal of an order denying a motion for preliminary injunction, and thus did not analyze the issue in the context of sanctionable conduct. Defendants cite *Tally-Ho* to argue that trademark rights depend on use of a trademark in

commercial activity, and argue that Ideal Image has never used the term "Ideal" in connection with commercial activity. That assertion is false. In fact, the very name of Plaintiff's business is "Ideal Image." Plaintiff has used the term "Ideal" for more than 15 years, now at approximately 130 locations. And as noted above, Plaintiff has federally registered protected trademarks for a series of marks using the "Ideal" formative prefix.[5]

Defendants next contend -- without citation to authority -- that Plaintiff has a non protectable right in the term "Ideal" as a prefix to trademarks in laser and facial treatments, because it does not have a trademark for the term "Ideal." Further, Defendants contend that others have trademarks that incorporate the term "Ideal." These arguments are likewise legally flawed. The Court in *J & J Snack Foods* noted that McDonald's did not have a trademark for "Mc" and in fact others did. Nevertheless, it found that McDonald's had a family of trademarks which precluded others from using terms such as "MCPRETZEL" and "MCDUGAL":

> J & J does not challenge the renown of the individual marks, but argues that a trademark owner must own trademark rights to the formative itself, in order to establish rights to a family based on the formative.  J & J points out that the "Mc" mark, standing alone, is registered by McCormick & Company for use with spices. ***However, it is not correct that the formative itself must be a trademark in order to sustain a family of marks*** . . .
>
> J & J refers to the large number of "Mc" marks not registered to McDonald's, and argues that the existence of these marks is inconsistent with McDonald's claim to a family of marks. Third party registrations of various "Mc" names does not defeat McDonald's specific family of marks wherein the prefix "Mc" is used with generic food names to create fanciful words. *See Motorola*, 317 F.2d at 400, 137 USPQ at 553 ("As a matter of logic it would seem to us that if opposer has a family of six marks all starting with the [same] word ..., it still has that family notwithstanding there may be some others using the same word").

*J & J Snacks*, 932 F.2d at 1463 (emphasis added).

Defendants also argue that Plaintiff's Complaint is frivolous because there are third parties which also appear to own, or who owned, trademarks incorporating the word "Ideal." [DE 135, at pp. 10-11].  In essence, while not pled in this case, Defendants appear to be asserting

---

[5] As explained by Plaintiff's corporate representative, Defendants' use of the name "Idealaser" is likely to confuse consumers because Plaintiff "is so well known for laser hair removal ***and the word Ideal*.**" [Ex. D, Annemarie Frank Dep. Tr. at p. 59:11-19 (emphasis added)].

a *jus tertii* defense, which implicates the rights of a third party (generally another trademark owner).  *See Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 909 (E.D.N.Y. 1988) (stating that "[i]n the context of a trademark infringement suit, a claim by defendant that a third party has rights in the mark superior to plaintiff is . . . a *jus tertii* defense") (quoting 2 J. McCarthy, *Trademarks and Unfair Competition*, § 31:39, at 671).  Even if Defendants raised this defense, it would be due to be stricken because "[m]odern decisions have flatly rejected the [*jus tertii*] defense in trademark litigation."  *Bambu*, 683 F. Supp. at 909;  *see also Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 15-385, 2016 WL 3912988, at *1-4 (E.D. Tex. June 28, 2016) (striking what amounted to a *jus tertii* defense to a claim of trademark infringement).  As Professor McCarthy explained:

> As a matter of public policy, *jus tertii* should not be allowed as a defense in any trademark case.  So long as plaintiff proves rights superior to defendant, that is enough.  Defendant is no less an infringer because it is brought to account by a plaintiff whose rights may or may not be superior to the whole world.  The plaintiff's speculative dispute with a third party does not concern the defendant.

*Bambu*, 683 F. Supp. at 909-10 (citing McCarthy, *Trademarks and Unfair Competition*, § 31:39, at 675).

Plainly, none of Plaintiff's claims, which stem from Defendants' use of a name that is confusingly-similar to Plaintiff's Family of Ideal Marks, can be classified as frivolous. To the contrary, the claims were, and remain, well grounded in fact and the law.

### G.   None of Plaintiff's Claims or Actions Warrant Sanctions Under Rule 11, 28 U.S.C. § 1927 or this Court's Inherent Authority

As discussed above, not only are the claims asserted in Plaintiff's Complaint not frivolous under any standard, the claims are very strong and Plaintiff is likely to prevail at trial. Moreover, the record is clear that Plaintiff has not been the moving force behind this protracted litigation.  Instead, the numerous discovery hearings and other briefs were largely the product of Defendants' own conduct.  For these reasons, Defendants' request for sanctions must be denied.

### (1)   Sanctions are not Warranted Under Rule 11

Defendants ask this Court to sanction Plaintiff and its counsel because, according to Defendants, Plaintiff's claims are "frivolous," and because Plaintiff's interrogatory answer initially stated that Plaintiff had used "Ideal Laser" as a trademark, but was later supplemented to accurately state that Plaintiff has not used "Ideal Laser."  Defendants' request for sanctions under

Rule 11 must be denied because Rule 11(d) makes clear that Rule 11 does not apply to discovery responses and because, as demonstrated above, Plaintiff's claims are strong, rather than frivolous.

In this Circuit, "a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous in view of the facts or law, and then if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry." *Suntrust Bank v. Ruiz*, No. 14-21107, 2014 WL 3521094, at *1 (S.D. Fla. Oct. 17, 2014) (Goodman, J.). "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any reasonable chance of success or is a reasonable argument to change the existing law." *Collar v. Abalux, Inc.*, No. 16-20872, 2018 WL 3328682, at *10 (S.D. Fla. July 5, 2018) (Goodman, J.). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis, because it is supported by no evidence or only by patently frivolous evidence." *Id*. at *11. "The burden required to impose sanctions under Rule 11 is steep." *Suntrust*, 2014 WL 3521094, at *4.

"Under the first prong – whether the party's claims are objectively frivolous- the reviewing court takes into consideration what was reasonable to believe at the time that the subject of the sanctions motion was filed." *Id*. at *1 (citing *Donaldson*, 819 F.2d at 1556). Sanctions for an objectively frivolous claim are proper in these three circumstances: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party filed a pleading in bad faith for an improper purpose. *Id*. None of these circumstances exist here.

If the first prong of the analysis is met, then a reviewing court moves to the second prong, which is the "reasonable inquiry prong," which focuses on whether the lawyer should have been aware that the claims were frivolous. *Id*. at *2. In particular, the reviewing court looks to the amount of time that was available for investigation before filing the document in question, whether the signing attorney had to rely on a client for the underlying facts at issue, and whether the document was based on a plausible view of the law, to determine whether the attorney's pre-filing inquiry was reasonable. *Id*. "Defendants, as the parties seeking sanctions, must establish

both elements, and the Court must resolve all doubts in Plaintiff's favor." *Collar*, 2018 WL 3328682, at *10 (Goodman, J.).

Before getting into the substance of Defendants' arguments, it is again important to consider the timing of Defendants' Motion for Sanctions. Defendants have not previously moved to dismiss Plaintiff's claims, or sought to have them disposed of by way of a motion for summary judgment. To the contrary, the only motion for summary judgment filed by Defendants seeks summary judgment solely on Defendants' second affirmative defense of laches. [DE 102]. Defendants' present Motion is a thinly-veiled attempt at asserting an untimely and procedurally-deficient motion for summary judgment, and asking this Honorable Magistrate Judge, rather than Judge Cooke, to dispose of Plaintiff's claims before the upcoming trial.[6] As this Court noted in *Suntrust*, this is "problematic." *Suntrust*, 2014 WL 5321094, at *2 (stating that "[w]ere the undersigned to make substantive rulings or findings related to this Motion for Sanctions, those findings or rulings could well be at odds with the District Court's later determinations"); *see also Turnquist v. Noll*, No. 10-80030, 2011 WL 4637011, at *5 (S.D. Fla. Oct. 5, 2011) (denying Rule 11 motion for sanctions in part because the moving party was, "[i]n effect . . really asking in his motion for the Court to resolve some of the primary factual issues underlying his claims"). Based on the foregoing, this Court should exercise its discretion and deny the Motion for Sanctions.

Even if this Court were to consider the merits of Defendants' Motion, it should be denied. Defendants argue that Plaintiff and its counsel should be sanctioned under Rule 11 because Plaintiff has not used the "Ideal Laser" trademark, and therefore could not, in Defendants' opinion, have brought claims to prevent Defendants from using a specific trademark owned, but not used by Plaintiff. [DE 135, at pp. 12-13]. Defendants' argument totally ignores the allegations of Plaintiff's Complaint, which discuss that it owns a family of trademarks entitled to protection, and the ample legal authority which makes clear that the owner of a family of trademarks can seek to enjoin another company from using a confusingly similar trademark, even where the plaintiff does not own or use the trademark.[7] Like in *J & J Snacks*, Plaintiff has

---

[6] Notably, Judge Cooke's order referring matters to this Court does not include dispositive motions. [*See* DE 6].

[7] *See Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Credito Oriental*, 832 F.3d 15, 28-30 (1st Cir. 2016); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814-15 (7th Cir. 2002);

invested tens of millions of dollars building its brand and has come to be known as a leader in the provision of laser hair removal services. Defendants have attempted to pawn off on Plaintiff's goodwill by adopting the name "Idealaser," and while Defendants have, after this lawsuit was filed, taken the position that their company is actually pronounced "Idea_Laser," the video on Defendants' website, in which the company is referred to as "Ideal Laser," proves that Defendants are being disingenuous in taking this position. [*See* DE 108-2, at pp. 8:6-9:7 and 11:7-12].

Based on the foregoing, Defendants' argument falls flat and sanctions against Plaintiff and its counsel are not warranted under Rule 11. *See Suntrust*, 2014 WL 5321094, at *4 (denying motion for sanctions under Rule 11 because the plaintiff's complaint had some reasonable factual basis and because, apart from an allegation that the complaint was "frivolous," the defendant did not make any specific argument that the complaint was filed in bad faith or for an improper purpose).[8]

Defendants also seek sanctions against Plaintiff and its counsel in connection with Plaintiff's supplementation of its answers to Defendants' first set of interrogatories. Sanctions for discovery responses under Rule 11, however, are expressly prohibited by Federal Rule of Civil Procedure 11(d), which states that "[t]his rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d); *Guimaraes v. Nors*, 366 Fed. Appx. 51, 53-54 (11th Cir. 2010) (denying motion for sanctions and stating that Rule 11 "explicitly states that it does not apply to . . . discovery, requests, responses . . ."). As a result, Defendants' request for Rule 11 sanctions for alleged "discovery abuses" must be denied as well.

---

*Black & Decker Corp. v. Positec USA Inc.*, No. 11-5426, 2015 WL 5612340, at *5 (N.D. Ill. Sept. 22, 2015); *J & J Snack*, 932 F.2d at 1462-65; *Motorola, Int'l Diagnostics Tech., Inc. v. Miles Labs., Inc.*, 746 F.2d 798-800 (Fed. Cir. 1984); *AMF Inc. v. Am. Leisure Prod., Inc.*, 474 F.2d 1403, 1406-07 (C.C.P.A. 1973); *Motorola, Inc. v. Griffiths Elecs., Inc.*, 317 F.2d 397, 399 (C.C.P.A. 1963).

[8] "The mere fact that [Defendants] disagree[] with [Plaintiff's] characterization of the facts does not justify sanctioning [Plaintiff's Counsel]." *Turnquist*, 2011 WL 4637011, at *5 (Goodman, J.). If that is all it took to warrant the imposition of sanctions, "it would mean that a sanctions motion could be filed in ***any*** case where a defendant's answer denied some of the allegations . . . which would mean that sanctions motions could be filed in virtually ***every*** civil case." *Id*. (emphasis in original).

**(2)        Sanctions are not Warranted Under 28 U.S.C. § 1927**

Sanctions, likewise, are not warranted under 28 U.S.C. § 1927 because nothing done by the undersigned counsel rises to a violation of the statute,[9] which states that:

> Any attorney or other person admitted to conduct cases in any court in the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Section 1927 is aimed at unreasonable and vexatious multiplication of proceedings: the statute addresses situations when an attorney engages in "dilatory tactics throughout the entire litigation." *Byrne*, 261 F.3d at 1106.  "Sanctions under § 1927 are warranted when the attorney's conduct is 'tantamount to bad faith'" – which the Eleventh Circuit has described as "an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim." *Peer v. Lewis*, 606 F.3d 1306, 1313-14 (11th Cir. 2010).      To impose sanctions under this statute: (1) the attorney must engage in unreasonable and vexatious conduct; (2) that conduct must multiply the proceedings; and (3) the amount of the sanction must bear a financial nexus to the proceedings." *Collar*, 2018 WL 3328682, at *11 (Goodman, J.).

Defendants seek sanctions contending that "Plaintiff's counsel knew its claims were frivolous at the time the complaint was filed." [DE 135, at p. 14].  As explained above, there is nothing even remotely frivolous about Plaintiff's claims, and Plaintiff is likely to prevail at trial.

Defendants also seem to be suggesting that Plaintiff has delayed discovery. [DE 135, at pp. 14-15].  This argument is belied by the record which demonstrates that Plaintiff has done its part to avoid delay during discovery, and that it was in fact Defendants who ***repeatedly*** delayed discovery by, among other things, serving improper boilerplate objections that violated this Court's express instructions, serving responses which failed to comply with the Rules of Civil

---

[9] Under no circumstances can Plaintiff be sanctioned under § 1927 as requested by Defendants, because sanctions may be imposed under "§ 1927 only against the offending attorney; clients may not be saddled with such awards."  *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Likewise, Defendants request that Plaintiff's law firm, Genovese Joblove & Battista, P.A., be sanctioned under 28 U.S.C. § 1927 also falls flat.  *See Collar*, 2018 WL 3328682, at *12 (Goodman, J.) (stating that sanctions cannot be awarded against a law firm under 28 U.S.C. § 1927).

Procedure (and maintaining those objections even after the deficiencies were brought to Defendants' attention), outright refusing to appear for depositions or terminating translated depositions after seven hours and refusing to appear to complete the deposition.[10]  The parties have been before this Court on four occasions and at each hearing this Court has, for the most part, granted all of the relief sought by Plaintiff, and sustained in whole or part, all of Plaintiff's objections. [*Compare* DE 48, DE 50, DE 70 and DE 83 *with* DE 55, DE 59, DE 76 and DE 86].

Defendants also wrongfully argue that "depositions had to be rescheduled because [the undersigned] would not provide dates of availability for potential fact witnesses in December nor would he provide contact information [for the witnesses]." [DE 135, at p. 14].   Again, Defendants misrepresent the facts.  As an initial matter, Plaintiff provided the address for Gary Culpepper as soon as it was obtained. [*See* Exhibit E, December 4, 2018 E-Mail].  Moreover, Defendants' representation to this Court that Plaintiff refused to provide deposition dates is again, demonstrably false.   Contrary to Defendants' accusation, the parties' written correspondence demonstrates that, at the latest, by **November 9, 2018**, the undersigned counsel was cooperating with Defendants' counsel in connection with the scheduling of depositions. [Ex. F, November 9, 2018 E-Mail].  Additionally, soon thereafter, the parties agreed to December 17, 2018 and December 18, 2018 for the depositions of Gary Culpepper and Jenny Sutter. [Ex. G, November 23, 2018 E-Mail], and the depositions took place on those dates. Based on the parties' correspondence, once again, Defendants' accusations prove meritless.

To the extent that Defendants are suggesting that Plaintiff or the undersigned delayed the depositions of Plaintiff's corporate representative and Adam Lopez, this Court has already considered those arguments and required Defendants to amend the topics of inquiry for the corporate representative deposition (topics to which Plaintiff served objections). [*See* DE 86, at p. 1].  While the Court did not grant Plaintiff the protective order sought in connection with Adam Lopez's deposition, the Court did warn Defendants' counsel that if she asked irrelevant questions, Plaintiff could seek the "appropriate relief." [*Id.* at p. 2].  Additionally, again, as

---

[10] Notably, Defendants took this position even after Plaintiff's counsel provided Defendants with a highlighted copy of this Court's opinion in *Procaps S.A. v. Pantheon Inc.*, No. 12-24356, 2015 WL 2090401, at *6 (S.D. Fla. May 5, 2015), which unequivocally stated that where a translator is used, the amount of deposition time is doubled.  [*See* Ex. B, Idealaser Corporate Rep. Dep. I, at pp. 11:17-13:1, 126:3-130:23 and 142:21-143:9].

reflected in the parties' correspondence, Plaintiff did its part to avoid delaying the depositions of Plaintiff's corporate representative and Adam Lopez by attempting to narrow the overbroad topics of inquiry included in Defendants' corporate representative deposition notice,[11] and by offering to produce Adam Lopez for a deposition so long as Defendant agreed to certain limitations to curb the possibility of additional improper conduct at depositions.   Plaintiff's efforts are thoroughly discussed and well-documented in Plaintiff's Response to Defendants' Motion for Discovery Hearing Outside Judge Goodman's Ordinary Discovery Hearing Schedule [*See* DE 80, at pp. 7-15].

To the extent that Defendants argue that sanctions are warranted because Plaintiff did not timely respond to written discovery requests, Defendants again misrepresent Plaintiff's conduct. Plaintiff's discovery responses have all been timely, and Plaintiff has voluntarily supplemented its discovery responses in various instances. [*See* Composite Exhibit K].   Notably, Plaintiff's alleged total failure to provide written discovery responses has not been noted in any notices of hearing [*See* DE 48, DE 50, DE 61, DE 70 and DE 79].  Defendants also state that "Mr. Blynn has not produced responsive documents to the many requests for production." [DE 135, at p. 15]. Defendants do not identify what documents were not produced.   To Plaintiff's knowledge, subject to its objections, and this Court's orders, all responsive documents have been produced.[12]

Defendants also argue that sanctions are warranted under § 1927 because Plaintiff's interrogatory answers originally stated that Plaintiff used "Ideal Laser," but were later supplemented after Plaintiff discovered that it did not use "Ideal Laser" as a trademark. While

---

[11] The parties' written correspondence again confirms that by August 2, 2018, Plaintiff's counsel was offering to check to see if individuals were available to be deposed once Defendants proposed dates, and after Defendants provided topics of inquiry for a corporate representative. [*See* Ex. H, August 2, 2018 E-Mail;  Exhibit I, December 4, 2018 E-Mail; Exhibit J, December 5, 2018 E-Mail, at 7:43 p.m.].

[12] Defendants suggest that Plaintiff "has delayed producing verified responses to interrogatories on not one but two occasions." [DE 135, at p. 14].  Plaintiff has no record of Defendants complaining of such a deficiency before the filing of its present Motion and, ironically, Plaintiff had to seek this Court's assistance when ***Defendants*** failed to provide verification pages [DE 70, at ¶ 3]. To the extent Defendants complain about Plaintiff's response to the second set of interrogatories, a response to interrogatories which merely asserts an objection (which was the case with Plaintiff's response to Defendants' second set of interrogatories), does not need to be signed by Plaintiff, and instead only by Plaintiff's counsel. Fed. R. Civ. P. 33(b)(5).

Defendants are correct that the interrogatory answers have been supplemented upon Plaintiff's discovery that it has not used "Ideal Laser" as a trademark, there has been no bad faith on the part of Plaintiff or its counsel.  Nor, importantly, have Defendants adduced any evidence or allegation that the supplement was anything other than what it was – the correction of a prior inadvertent misstatement.

At the time this lawsuit was filed, and at the time Plaintiff served its initial interrogatory answers, Plaintiff believed that it had used the "Ideal Laser" trademark on a pamphlet at one, or a few, Ideal Image® locations.  [Ex. L, Frank Decl. at ¶ 3].  After the initial discovery responses were served, however, Plaintiff learned that it had not, in fact, used the "Ideal Laser" trademark on the pamphlets as originally thought.  [*Id.*].  Upon this discovery, Plaintiff supplemented its answers to interrogatories nos. 4-7 and 16 to make clear that Plaintiff had not used "Ideal Laser" as a trademark. [DE 135-3].[13]

Plaintiff's corporate representative confirmed that Plaintiff had not used "Ideal Laser" as a trademark. [Ex. D, Annemarie Frank Dep. Tr. at pp. 24:24-25:2; 32:6-10, 33:12-15; 36:9-12;]. Plaintiff's corporate representative also clearly explained that the only place that the words "Ideal" and "Laser" were used together by Plaintiff was in some "alt text" coding on Plaintiff's legacy website. [*Id.* at pp. 102:4-15, 103:3-104:24, 105:12-106:20, 107:15-18; 109:15-23, 176:4-178:5]. Plaintiff's corporate representative also clearly explained that Plaintiff does not use "Ideal Laser" as a keyword. [*Id.* at pp. 181:11-23, 183:3-184:11]. Plaintiff's corporate representative's testimony is consistent with Plaintiff's supplemental responses to interrogatories nos. 4-7 and 16 which state that Plaintiff has not used the "Ideal Laser" trademark.

There is simply no authority standing for the proposition that a party should be sanctioned for supplementing a previously inadvertently inaccurate discovery response.  In reality, what Defendants actually seem to be arguing is that Plaintiff and its counsel should be sanctioned for inadvertently not correcting the answer to interrogatory no. 17 when it corrected its other interrogatory responses in the same set of interrogatory responses.  But "[b]ad faith is

---

[13] Plaintiff inadvertently did not remove the reference to the use of "Ideal Laser" in the answer to interrogatory no. 17, which dealt with Plaintiff's affirmative defenses to Defendants' counterclaim, which Defendants have since dismissed. [DE 69].  When Defendants' counsel asked about the use of "Ideal Laser," Plaintiff's corporate representative did not waiver and confirmed that the "Ideal Laser" trademark had not been used in advertising. [Ex. D, Annemarie Frank Dep. Tr. at p. 65:8-11].

the touchstone for the imposition of sanctions under § 1927." *Oginsky v. Paragon Props. of Costa Rica, LLC*, No. 10-21720, 2013 WL 12246261, at *5 (S.D. Fla. Jan. 31, 2013) (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239-40 (11th Cir. 2007)). "If the attorneys' conduct was not done with intentional bad faith, merely unintended, inadvertent, and negligent acts will not support the imposition of sanctions under § 1927; rather, the power to impose sanctions under § 1927 should be exercised only in instances of a serious and studied disregard for the orderly processes of justice." *Id.* (citing *Kaplan v. Burrows*, No. 10-95, 2011 WL 5358180, at *9 (M.D. Fla. Sept. 6, 2011)); *Amlong*, 500 F.3d at 1241-42 ("negligent conduct, standing alone, will not support a finding of bad faith under § 1927 – that is, an attorney's conduct will not warrant sanctions if it simply fails to meet the standard of conduct expected from a reasonable attorney"). Here, there was no bad faith. To the contrary, Plaintiff and its counsel corrected its initially incorrect interrogatory answers as soon as it learned that Plaintiff had not used "Ideal Laser" as a trademark. What is left is the inadvertent failure by Plaintiff's counsel to remove the remaining reference to "use" in the answer to interrogatory no. 17, which dealt with Defendants' counterclaim that was withdrawn soon after the interrogatory responses were supplemented. This inadvertence comes nowhere close to the "bad faith" or a "serious and studied disregard for the orderly processes of justice" necessary for the imposition of sanctions under § 1927. Defendants' request for sanctions must be denied for this reason as well.

Defendants conclude by stating that "Plaintiff's counsel has multiplied and delayed the judicial proceedings in this case" and that "[f]airness requires the attorneys and the firm be held accountable for their utter and complete disregard of the legal process and the duty of candor which they owe the Court." [DE 135, at p. 15]. Again, this bald allegation is simply false and this Court, having presided over four different discovery hearings, which have lasted, in total, over seven hours [*See* DE 54, DE 58, DE 75 and DE 85], was previously in a unique and better position to consider the same arguments currently being made by the Defendants. Defendants made these same arguments at those hearings and asked for attorneys' fees to be awarded. The Court did not award Defendants any fees, but instead awarded **Plaintiff** attorneys' fees [DE 83, at pp. 3-4]. As such, Defendants' specious and unsupported allegation that Plaintiff and its counsel "multiplied and delayed" the proceedings in this case warrants no consideration, and Defendants' request for sanctions must be denied.

**(3)     Sanctions are not Warranted Under This Court's Inherent Authority**

This Court has the inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). The Court may impose sanctions when "the client or his attorney, or both, … has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1372 (S.D. Fla. May 18, 2005) (citing *Chambers*, 501 U.S. at 45). "The Eleventh Circuit has explained that '[t]he key to unlocking a court's inherent power is a finding of bad faith.'" *Id.* at 1373; *see In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1732 (11th Cir. 2009) ("To impose sanctions under the court's inherent power, the court must find bad faith."). Bad faith can only be found where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent." *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002).

Here, Defendants have failed to establish any bad faith on the part of Plaintiff or Plaintiff's counsel. Plaintiff's infringement-based claims are all well-grounded in the facts and the law and, as explained above, Plaintiff is likely to prevail at trial. Thus, there can be no finding that Plaintiff's claims are frivolous. Likewise, Plaintiff and its counsel are not pursuing Plaintiff's claims for the purpose of harassing Defendants. To the contrary, the claims were asserted with the good faith intent of stopping Defendants' use of the confusingly-similar name "Idealaser." Plaintiff's claims are supported by the facts and the law, are extremely strong, and Plaintiff will likely prevail at trial. As a result, there is simply no basis for an award of sanctions in connection with Plaintiff's claims, and Defendants' request for sanctions must be denied.

It also appears that Defendants are taking the position that the Court should, under its inherent authority, sanction Plaintiffs because "Plaintiff and its counsel's extreme adversarial conduct contributed to the legal fees in this case." [DE 135, at p. 15]. Of course, Defendants fail to identify the "extreme adversarial conduct" to which they refer, nor could they given that Plaintiff and its counsel have not driven up litigation costs, but instead have always taken steps to alleviate the need for avoidable litigation. For example, after Defendants amended their affirmative defenses, the undersigned conferred with Defendants' counsel and asked if Defendants would withdraw their first affirmative defense of "failure to state a claim." [DE 44, at p. 6]. Defendants refused to withdraw the "failure to state a claim" defense, requiring Plaintiff to file its motion to strike, which asked the Court to strike the defense or treat it as a denial. [DE

44].  Despite initially refusing to withdraw the first affirmative defense, Defendants responded to the motion to strike by agreeing that the defense should be treated as a denial. [DE 45, at p. 2].

Plaintiff also tried, on every occasion, to avoid burdening this Court with the numerous discovery hearings in this case.  For example, before scheduling the first discovery hearing [DE 48], Plaintiff met and conferred with Defendants' counsel and informed her that the formulaic boilerplate objections[14] asserted by Defendants were improper, as explained in numerous opinions, and by this Court's own Discovery Procedures Order [DE 6, at p. 6].  Despite the undersigned pointing out the deficiencies in the responses, for the most part, Defendants refused to address the issues, **requiring** Plaintiff to seek this Court's intervention. [DE 48].  The Court either overruled Defendants' objections, or ordered that no further action was necessary because Defendants' counsel represented at the hearing that even without the objections, there would be no responsive documents, or additional responsive documents. [DE 55].  The next discovery hearing was again largely necessitated by Defendants' refusal to correct or withdraw the same type of discovery responses and objections which led to the first discovery hearing. [*See* DE 50].[15]  Before setting the hearing, Plaintiff's counsel again attempted to resolve the issues and explained to Defendants' counsel the improper nature of the responses and objections. Defendants again refused to simply correct the deficient responses and objections.   The Court again largely ruled against Defendants, while at the same time sustaining in whole or in part Plaintiff's objections, which Defendants contended were improper. [*See* DE 59].

Unfortunately, Defendants' pattern of asserting responses and objections which were hornbook examples of improper responses continued,[16] and Plaintiff was required to schedule a

---

[14] The Court may recall that the improper objections and responses fell within various "buckets": (1) "subject to and without waiving" or "if any exist" responses; (2) documents or information is "equally available" objections; (3) boilerplate "vague, overly broad and unduly burdensome" objections; (4) "discovery is ongoing" and is "premature" responses; and (5) unsupported "not proportional" objections.

[15] Defendants complain that only 150 pages were initially produced in response to Defendants' first request for production. [DE 135, at p. 4, ¶ 14].  Defendants fail to mention that Plaintiff asserted objections to the scope of the majority of Defendants' requests for production.  Plaintiff repeatedly suggested to Defendants that they narrow the scope of the requests.  Defendants simply refused.

[16] By way of example, rather than answer interrogatories, Defendants directed Plaintiff to review unidentified documents produced earlier in the lawsuit.  The undersigned conferred with

third discovery hearing. [DE 61].   Additionally, Plaintiff was required to seek this Court's assistance in compelling Odalys Alonso to appear for her deposition after Defendants took the legally unsupported position that she was not required to appear as an individual if she was first produced as a corporate representative.   Plaintiff was also required to obtain an order from this Court making clear that the amount of run-time for Alonso's deposition would be doubled given that she requested a translator.   Again, this Court ruled in Plaintiff's favor on these issues. [DE 76].   At the last hearing [DE 79 and DE 83], which proved to be difficult to schedule due to Defendants' conduct [*See* DE 80], this Court sustained Plaintiff's objections to Defendants' overbroad Rule 30(b)(6) deposition notice and overruled the majority of Defendants' improper objections. [DE 86].   This Court also awarded Plaintiff an attorneys' fee award against Defendants and their counsel. [*Id.* at pp. 3-4].   It is incredible that, based upon the foregoing, Defendants would accuse Plaintiff of bad faith or "extreme adversarial conduct."   Or perhaps, it is unsurprising, given the host of positions and tactics engaged in by Defendants, which are wholly unsupported by the facts and the law.

## <u>CONCLUSION</u>

For all of the foregoing reasons, including its procedural and substantive deficiencies, Defendants' Motion for Sanctions should be denied.

---

Defendants' counsel and read her the language from Rule 33(d)(1), and the cases analyzing the rule, which all state that a party utilizing the option to produce records must ***specifically*** identify the documents.  Despite this, Defendants refused to correct their interrogatory answers. Again, this Court ordered Defendants to comply with the Rule. [DE 76, at p. 3].

Dated:  June 3, 2019

GENOVESE JOBLOVE & BATTISTA, P.A.
*Attorneys for Plaintiff*
100 Southeast Second Street, Suite 4400
Miami, Florida  33131
Telephone:  (305) 349-2300
Facsimile:   (305) 349-2310


By: /s/ Aaron S. Blynn
       Michael D. Joblove
       Florida Bar No.: 354147
       mjoblove@gjb-law.com
       Aaron S. Blynn
       Florida Bar No. 0073464
       ablynn@gjb-law.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically field the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to all parties of record, on this 3rd day of June, 2019.

/s/ Aaron S. Blynn
       Attorney

## SERVICE LIST

Michael D. Joblove
mjoblove@gjb-law.com
Aaron S. Blynn
ablynn@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Miami Tower
100 Southeast Second Street
Miami, Florida  33131
Telephone:     (305) 349-2300
Facsimile:      (305) 349-2310
*Attorneys for Plaintiff Ideal Image Development Corporation*

Juliet Alcoba
jalcoba@miamipatents.com
ALCOBA LAW GROUP, P.A.
3399 NW 72 Avenue, #211
Miami, Florida 33122
Telephone:     (305) 362-8118
Facsimile:      (305) 436-7429
*Attorneys for Defendants Idealaser Hair Removal Corp. and Odalys Alonso*